UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

DENNIS LARWETH,

                    Petitioner,

                                                    **DECISION AND ORDER**
          -v-                                       No. 04-CV-0050(VEB)

JOHN CONWAY,

                    Respondent.

## I.      Introduction

         Dennis Larweth ("Larweth" or "petitioner") filed a *pro se* petition for a writ of habeas

corpus pursuant to 28 U.S.C. § 2254 challenging his conviction on August 6, 2001, in

Cattaraugus County Court following a guilty plea to one charge of attempted assault in the first

degree. The parties have consented to disposition of this matter by the undersigned pursuant to

28 U.S.C. § 636©.

## II.     Factual Background and Procedural History

         The conviction here at issue stems from the beating inflicted by Larweth upon his

girlfriend, Carol Doak ("Doak" or "the victim"), on February 28, 2001. On that date, Larweth

entered Doak's home and punched and kicked her repeatedly, primarily in the head and face. *See*

Exhibit ("Ex.") D at 6-7, Respondent's Appendix of Exhibits ("Resp't Ex."). Doak sustained

serious injuries, including a fractured maxillary sinus and orbital wall, a blow-out fracture of the

orbital floor, a hematoma of the left adenoid and maxillary sinuses, and multiple bruises and

abrasions. *See* Resp't Ex. B at 47-48. Larweth was indicted on one count of first degree burglary

(N.Y. Penal Law § 140.32(2)), a class B felony; and two counts of first degree assault (N.Y.

Penal Law § 120.10(1), (4)), a class B felony. On June 18, 2001, petitioner accepted an offer to

plead guilty to one count of attempted first degree assault in full satisfaction of the indictment in

exchange for a waiver of his appellate rights and a sentencing cap of twelve years. *See* Resp't Ex.

D at 2-6. On August 1, 2001, the prosecutor filed its notice of intent to request that Larweth be

sentenced as a second felony offender. *See* Resp't Ex. B at 73. Sentencing took place on August

6, 2001, and the trial court imposed the agreed-upon sentence of a determinate term of twelve

years, in accordance with the prosecutor's sentencing promise. *See* Resp't Ex. E at 6. On August

9, 2001, Larweth filed a *pro se* motion to vacate his sentence pursuant to New York Criminal

Procedure Law ("C.P.L.") § 440.20, alleging that (1) his due process rights were violated at

sentencing by "'Jenna's Law', (post supervision) [sic]"[1]; (2) his predicate felony status was

---

[1]       In 1998, the New York State Legislature eliminated parole for all violent felony offenders in 1998, and passed "Jenna's Law," which enacted a scheme of determinate sentencing to be followed by periods of mandatory post-release supervision. *People v. Catu*, 4 N.Y.3d 242, 244 (N.Y. 2005) (citing L. 1998, ch. 1 (Jenna's Law)). The Legislature defined each determinate sentence to "also include[ ], as a part thereof, an additional period of post-release supervision[.]" *Id.* (quoting N.Y. Penal Law § 70.45(1); Senate Mem. in Support, 1998 McKinney's Session Laws of N.Y. at 1489 (describing post-release supervision as "a distinct but integral part of the determinate sentence")). Whereas the term of supervision to be imposed may vary depending on the degree of the crime and the defendant's criminal record, *see* N.Y. Penal Law § 70.45(2)), "imposition of supervision is mandatory and thus 'has a definite, immediate and largely automatic effect on defendant's punishment.'" *Id.* In 2005, the New York Court of Appeals held in *People v. Catu* that because a defendant pleading guilty to a determinate sentence must be aware of the post-release supervision component of that sentence in order to knowingly, voluntarily and intelligently choose among alternative courses of action, the failure of a court to advise the defendant of the post-release supervision mandatory under Penal Law § 70.45(1) requires reversal of the conviction. *Id.* at 245. When Larweth filed his motion to vacate his sentence in 2001, the *Catu* rule had not yet been announced. The Court has only been able to find one case in New York addressing the retroactive applicability of *People v. Catu. See People v. Menjivar*, 2005 WL 2241757, at *2, 9 Misc. 3d 1108, 806 N.Y.S.2d 447 (N.Y. Sup. Sept. 14, 2005). The Supreme Court held in *Menjivar* that the law set forth in *Catu* did not have a retroactive effect because its purpose was unrelated to the fact-finding process and therefore it did not address guilt or innocence; the courts have extensively relied upon the old law and have not generally advised a defendant of post-release parole supervision as part of the sentence since it had not been determined that this factor was a direct and not an indirect consequence of a defendant's plea; and given the extent of the reliance by the courts when taking plea allocutions upon the old rule where defendants again were generally not advised of post-release parole supervision, retroactive application of the rule would work a substantial hardship upon the administration of justice. *Id.* at *2 (citing *People v. Mitchell*, 80 N.Y.2d 519, 525-26 (N.Y. 1992)).

obtained in violation of his constitutional rights; and (3) his guilty plea was involuntary. *See*

Resp't Ex. B at 122; *see also* Petitioner's Traverse ("Trav.") at 5, ¶11 (Dkt. #10). The trial court

denied the motion on September 7, 2001. *See* Resp't Ex. B at 124-25. Leave to appeal the denial

of this motion was denied by the Appellate Division.

On September 30, 2001, the Appellate Division, Fourth Department, of the New York

State Supreme Court denied Larweth's application to proceed *in forma pauperis* because defense

counsel had failed to file a notice of appeal. Thereafter, Larweth filed an application for

permission to file a late appeal, which was granted. The Appellate Division directed new defense

counsel to file and serve a late notice of appeal on or before January 21, 2001. On or about

September 22, 2002, appellate counsel filed a brief on behalf of Larweth, arguing that (1) "[a]s

[petitioner's] plea bargain was not properly enforced, his waiver of his right to appeal is

unenforceable and he must be allowed to withdraw his plea of guilty" or be excused from his

appellate-rights waiver; (2) the plea colloquy did not establish the requisite element of a

"dangerous instrument" for purposes of N.Y. Penal Law § 120.10(1) (assault with intent to cause

serious physical injury by means of a deadly weapon or dangerous instrument); (3) petitioner's

plea was not knowing and voluntary because he was not informed of the five-year period of post-

release supervision mandatorily added to his determinate twelve-year term of incarceration; (4)

the trial court erred in sentencing petitioner as a predicate felon (second felony offender); and (5)

his twelve-year determinate sentence was harsh and excessive. *See* Resp't Ex. A.

The People, in opposition, argued that as to his first claim regarding the performance of

his plea bargain, his failure to move to withdraw the plea rendered the issue unpreserved and, in

any event, the claim was without merit since the period of post-release supervision was not

within the control of the sentencing court, the court did not violate its part of the plea bargain.

Accordingly, the People argued, there was no basis to release Larweth from his agreed-upon

waiver of his appellate rights. The People argued that the issue relating to factual insufficiency of

the plea colloquy was encompassed within his valid waiver of his appellate rights. As to the

claim that his plea was involuntary due to the trial court's failure to inform him of the period of

post-release supervision, the People asserted the lack of preservation based on petitioner's failure

to move to withdraw his plea, as well as the appellate rights waiver. The People further

contended that petitioner was properly adjudicated as a second felony offender, and that his

agreed-upon sentence was neither harsh nor excessive. *See* Resp't Ex. F.

The Appellate Division unanimously affirmed Larweth's conviction on March 21, 2003.

*People v. Larweth*, 303 A.D.2d 1029 (App. Div. 4th Dept. 2003); Resp't Ex. G. Leave to appeal

to the New York State Court of Appeals was denied. *People v. Larweth*, 99 N.Y.2d 656 (N.Y.

2003); Resp't Ex. H.

Larweth then moved, *pro se*, to vacate the judgment pursuant to C.P.L. § 440.10 on

September 19, 2003, arguing that (1) trial counsel was ineffective because he "completely failed

to advise defendant of post-release supervision; to the very contrary, defense counsel mis-advised

defendant that he would receive an indeterminate sentence of 12 years at top, and his minimum

jail time would be 4 to 12 years" and that (2) trial counsel was ineffective in failing to move to

withdraw the plea or to file a notice of appeal despite being requested to do so. *See* Resp't Ex. I.

The trial court denied the motion on October 21, 2003, stating that it did "not understand why

failing to advise a pleading defendant of the period of post-release supervision after a determinate

sentence is any different than advising a defendant of parole supervision after an indeterminate

sentence." Resp't Ex. K at 2. The trial court noted that "some courts have apparently held that

defendants must be told of the parole supervision period after a determinate sentence is served,"

it did "not see a distinction." *Id.* at 3. Finally, the trial court stated that it was "unaware of any

authority holding the failure to advise a defendant of a period of post-release supervision, even if

that were the case, rises to the level of ineffective assistance of counsel." *Id.* Accordingly, the

trial court held, the C.P.L. § 440.10 motion was "in all respects denied." *Id.* Petitioner sought

leave to appeal the denial of the C.P.L. § 440.10 motion. *See* Resp't Ex. L. The People opposed

this application. *See* Resp't Ex. L.

This habeas petition followed in which Larweth claims the following grounds for relief,

all of which were raised on direct appeal or in support of his collateral motions for vacatur: (1)

the mandatory period of post-release supervision renders his plea bargain not properly

enforceable because he cannot receive his bargained-for twelve-year sentence; (2) his plea

colloquy did not establish the "dangerous instrument" element of the offense of attempted first

degree assault with a deadly weapon or dangerous instrument; (3) his plea was not knowing and

voluntary because the trial court erred in failing to inform him, prior to his plea, of the mandatory

five-year period of post-release supervision to be added to his sentence; (4) the trial court erred in

sentencing him as a predicate felon (second felony offender); (5) trial counsel was ineffective in

failing to inform him that his sentence contained a mandatory five-year period of post-release

supervision; (6) trial counsel was ineffective because he falsely represented that petitioner only

would have to serve 4 years of an indeterminate sentence; and (7) trial counsel was ineffective in

failing to move to withdraw the plea or to file a notice of appeal. *See* Petition ("Pet.") at 7-8, and

unnumbered page titled "Additional Grounds" (Dkt. #1). Respondent concedes that all of the

grounds raised in Larweth's habeas petition are fully exhausted pursuant to 28 U.S.C. § 2254(b)(1). Respondent's Memorandum of Law ("Resp't Mem.") at 4 (Dkt. #8). For the reasons set forth below, Larweth's petition for a writ of habeas corpus is granted in part and denied in part.

## III.   Discussion

### A.   Standard of Review

The filing of Larweth's petition post-dates the amendment of the federal habeas corpus statute on April 24, 1996, by the enactment of the Anti-terrorism and Effective Death Penalty Act ("AEDPA"). Pursuant to AEDPA, when a state court has adjudicated a habeas petitioner's claims on the merits, habeas relief may not be granted unless the state court's holding was contrary to, or was an unreasonable application of, clearly established Federal law, as determined by the United States Supreme Court; or was based on unreasonable determination of the facts in light of the evidence presented in petitioner's state court proceeding. *See* 28 U.S.C. § 2254(d)(1), (2); *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). In order to grant the writ there must be "some increment of incorrectness beyond error," although "the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted).

### B.   Procedural Default

Respondent contends that Larweth's claim regarding the voluntariness of his guilty plea is procedurally defaulted under the "adequate and independent state ground" doctrine because he failed to properly preserve the claim for appeal by moving to withdraw the plea. On direct

appeal, the appellate court held that "[b]ecause defendant failed to move to withdraw his plea or to vacate the judgment of conviction on that ground, he has not preserved his contention for our review[.]" *People v. Larweth*, 303 A.D.2d at 1030 (citing *People v Perillo*, 300 A.D.2d 1097 (App. Div. 4th Dept. 2002); *People v Moore*, 300 A.D.2d 1085 (App. Div. 4th Dept. 2002); *People v Kazmirski*, 299 A.D.2d 826 (App. Div. 4th Dept. 2002)). Respondent contends that the appellate court relied upon an adequate and independent state ground to dismiss the claim as procedurally barred, thereby precluding further federal habeas review of the claim by this Court. *See* Resp't Mem. at 4-5 (Dkt. #8).

The Supreme Court has held that federal courts shall "not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729 (1991) (citations omitted). "This rule applies whether the state law ground is substantive or procedural." *Id.* (citations omitted). The independent and adequate state ground doctrine may bar federal habeas review "when a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement" for in such cases "the state judgment rests on independent and adequate state procedural grounds." *Id.* (citing, *inter alia*, *Wainwright v. Sykes*, 433 U.S. 72, 81, 87 (1977)). Thus, an adequate and independent finding of procedural default precludes federal habeas review of the federal claim, unless the habeas petitioner can show "cause" for the default and "prejudice" attributable thereto, *Murray v. Carrier*, 477 U.S. 478, 485 (1986), or demonstrate that the failure to consider the federal claim on habeas will result in a  "fundamental miscarriage of justice,'" *id.* at 495 (quoting *Engle v. Isaac*, 456 U.S. 107, 135 (1982)).

The Court agrees with respondent that the state appellate court relied upon an "adequate and independent state ground" in rejecting Larweth's contention regarding the voluntariness of his guilty plea. The procedural bar clearly was an "independent" ground since it was the sole basis for the state court's decision. Furthermore, as discussed below, it was a fully "adequate" basis for the decision.

"[A] procedural bar will be deemed 'adequate' only if it is based on a rule that is 'firmly established and regularly followed' by the state in question." *Garcia v. Lewis*, 188 F.3d 71, 77 (2d Cir. 1999) (quoting *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991)). Whether application of the procedural rule is "'firmly established and regularly followed'" must be judged in the context of "the specific circumstances presented in the case," and "of the asserted state interest in applying the procedural rule in such circumstances." *Cotto v. Herbert*, 331 F.3d 217, 240 (2d Cir. 2003) (quoting *Lee v. Kemna*, 534 U.S. 362, 386-87 (2002)). In New York, the "firmly established and regularly followed rule," *Lee*, 534 U.S. at 386, for preserving a claim that a guilty plea was involuntarily entered requires a defendant to move to withdraw the plea or to vacate the judgment of conviction. *See People v. Hilliard*, 832 N.Y.S.2d 461, 2007 WL 1147311, at *1 (App. Div. 3d Dept. Apr. 19, 2007) ("[D]efendant's assertion that his guilty plea was involuntarily entered is unpreserved for our review in light of his failure to move to withdraw the plea or vacate the judgment of conviction[.]"); *People v. Smith*, 34 AD3d 1127, 1127 (App. Div. 3d Dept. (2006)); *People v. Peterson*, 35 A.D.3d 1195, 1196 (App. Div. 4th Dept. 2006) ("Although the contention of defendant that his plea was not knowingly, voluntarily or intelligently entered survives the waiver of the right to appeal, by failing to move to withdraw his plea or to vacate the judgment, defendant failed to preserve that contention for our review[.]");

*People v. Johnson*, 25 A.D.3d 331, 331 (App. Div. 1ˢᵗ Dept. 2006) ("Since defendant did not move to withdraw his plea, his challenge to the plea's voluntariness is unpreserved[.]").

As noted above, the procedural rule requiring a motion to withdraw the plea to preserve a claim of involuntariness constituted the appellate court's sole basis for decision in Larweth's case, and, as the foregoing cases make clear, compliance with the rule was demanded in the circumstances presented here. *See id.* Furthermore, Larweth completely failed to comply with the procedural rule. *See id.* Thus, the procedural bar relied upon by the appellate court in this case was "firmly established and regularly followed," and therefore constitutes an adequate state ground barring review of the merits of Larweth's claim. *Accord*, *e.g.*, *Antigua v. Giambruno*, No. 05 Civ. 2681 WHP/GWG, 2006 WL 800742, at *8 (S.D.N.Y. Mar. 30, 2006) (Report and Recommendation); *Brea v. New York City Probation Dept.*, No. 03 Civ.4822(RJH)(GWG), 2004 WL 389011, *8 (S.D.N.Y. Mar. 3, 2004) (Report and Recommendation).

The Court next must consider whether there exists "cause" for Larweth's procedural default of this claim and, in addition, whether he will be suffer "prejudice" as a result of being precluded from asserting this claim on habeas review. To claim that attorney error excuses a procedural default, a habeas petitioner must either have properly presented and exhausted an ineffective assistance of counsel claim in the state courts, *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000), or, if the ineffective assistance of counsel claim is itself procedurally barred, separately show that there is "cause" excusing said procedural default as well as prejudice resulting from the error, *id.* at 452-53. Here, Larweth properly presented and exhausted his claim of ineffective assistance of counsel since he claimed in support of his C.P.L. § 440.10 motion that trial counsel was ineffective in failing to inform him that his sentence included a mandatory

-9-

five-year period of post-release supervision. The issue becomes whether that omission amounts to the effective denial of representation to which Larweth is entitled under the Sixth Amendment of the Constitution.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court announced a two-part test for evaluating whether the assistance rendered by a petitioner's attorney was ineffective: "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. Counsel's performance is to be judged by an "objective" standard of "reasonableness," *id.* at 688, and "[j]udicial scrutiny of counsel's performance must be highly deferential" with the reviewing court making "every effort . . . to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time[,]" *id.* at 689. Because there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," the petitioner must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." *Id.* at 689 (citation omitted); *accord*, *e.g.*, *Aparicio v. Artuz*, 269 F.3d 78, 95 (2d Cir. 2001); *Sellan v. Kuhlman*, 261 F.3d 303, 315 (2d Cir. 2001).

The second prong of the *Strickland* standard requires the petitioner to demonstrate that he was prejudiced by counsel's deficient performance. *Strickland*, 466 U.S. at 687. In the context of a guilty plea, the "prejudice" requires petitioner to show that counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, the reviewing court must ask whether there is a "reasonable probability" that, without the mistakes made by

counsel, the petitioner still would have elected to plead guilty rather than proceed to trial. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985).

Larweth states in his affidavit supporting his C.P.L. § 440.10 motion that "counsel failed to inform petitioner he would have to serve additional five years on top of twelve year promised sentence, in prison or on post supervision [sic]." Trav. at 14 (Dkt. #10). However, Larweth neither recites facts or details of the meetings and conversations he had with his attorney to support his claim, nor does he provide an affidavit from his attorney describing the advice counsel did or did not give. Thus, all Larweth has offered is a conclusory, self-serving statement, which "shows" nothing, and indeed is belied by his sworn statements in open court during the plea colloquy that he wished to take advantage of the certainty offered by a plea agreement.[2] His

---

[2]

| The Court: | Have you talked this over with your attorney? |
| The Defendant: | Yes, I have. |
| The Court: | Are you satisfied with your representation? |
| The Defendant: | Yes, I am. |
| . . . | |
| The Court: | Do you understand what you're accused of doing? |
| The Defendant: | Yes, sir. |
| . . . | |
| The Court: | Now, by pleading guilty, you waive a series of constitutional rights. First and foremost you have a right to a trial. You can choose a trial by jury or trial with the judge. At a trial you would be presumed innocent. The district attorney would have to prove your guilt and he would have to prove it beyond a reasonable doubt. If it's a jury trial, the verdict has to be unanimous You can cross-examine the witnesses against you. You can call witnesses on your behalf. And you have a privilege against self-incrimination. That means no one could make you give an evidence against yourself and, in fact, no one could even make you testify. You understand you have those rights? |
| The Defendant: | Yes, I do, your Honor. |
| The Court: | Do you understand by pleading guilty you waive those rights? |
| The Defendant: | Yes, I do. |
| The Court: | You understand a plea of guilty is the same as a conviction after a trial? |
| The Defendant: | Yes, I do. |
| The Court: | Do you understand this is a felony? |
| The Defendant: | Yes. |
| . . . | |
| The Court: | Do you understand you're waiving your right to appeal? |
| The Defendant: | Yes, your Honor. |

statements to the trial court clearly established that he understood the rights he was giving up and that he nevertheless wished to avail himself of the benefits offered by the plea agreement. Moreover, during the factual portion of the allocution, there was some discussion as to whether Larweth actually was wearing the work boots that the prosecution described as a "dangerous instrument" or whether he had been wearing tennis shoes at the time of the assault. When the trial judge commented that he "wouldn't want to go to trial [and chance that a jury would *not* find] that tennis shoes weren't a dangerous instrument if he kicked somebody in the face with them," and asked Larweth if that was "one of the reasons that he was entering the plea to take advantage of the plea offer. . .[and] [t]ake the C [felony] rather than go to trial on the B [felony] . . . [a]nd reduce your liability accordingly?" Larweth affirmatively responded, "Exactly, your Honor[,]" and "Exactly[,]" and "Yes." *See* Resp't Ex. D at 5.

　　　As to the "prejudice" requirement, Larweth asserts that he "has suffered severe prejudice because he should have been full [sic] informed of all pluses and minuses of the agreed upon sentence[.]"  Trav. at 14, Section III titled "Argument" (Dkt. #10). With regard to whether the post-release supervision actually affected his decision to plead guilty, Larweth has provided nothing except his own equivocal statement that he "*may* not have pleaded guilty to any sentence beyond twelve years promised[.]" *Id.* (emphasis supplied). The Court finds it significant that

---

|  |  |  |
|---|---|---|
| . . . | | |
| The Court: | Other than the things we have spoken about here, has anyone promised you anything to get you to plead guilty? | |
| The Defendant: | No, your Honor. | |
| The Court: | Has anyone threatened you? | |
| The Defendant: | No. | |
| The Court? | Are you doing this voluntarily? | |
| The Defendant: | Yes. | |

Resp't Ex. D at 3-6.

Larweth has never stated that he would not have pleaded guilty, or even that he probably would

not have pleaded guilty, had he known about the five-year period of post-release supervision. Not

only are Larweth's statements in support of his habeas petition wholly insufficient to establish

that there is a "reasonable probability," that "he would not have pleaded guilty and would have

insisted on going to trial[,]"*Hill*, 474 U.S. at 58, they are belied by Larweth's sworn averments to

the trial court during his plea colloquy. *See* Resp't Ex. D at 3-6.

Had Larweth gone to trial and been convicted of three Class B felonies charged in the

indictment (one count of first degree burglary and two counts of first degree assault), he faced

three concurrent sentences of nine to twenty-five years in prison. N.Y. Penal Law § 70.06(3)(b);

*see also* Resp't Mem. at 16 (Dkt. #8). Even if he were convicted only of the one count of

attempted first degree assault to which he pleaded guilty, his sentence would have been the

same–nine to twenty-five years. *See id.* On top of the nine to twenty-five years, Larweth then

faced the mandatory period of post-release supervision of five years, unless the trial judge

decided to reduce it to no less than two and one-half years, *see* N.Y.  Penal Law §

70.45(2)–which was fairly unlikely, given Larweth's extensive criminal history. The Court

observes that given the evidence against him, it was unlikely that the jury would have acquitted

him. Hence, pleading guilty definitely was to Larweth's advantage. It is hard for this Court to

believe that, in light of all the above factors pointing toward an unfavorable outcome, Larweth

would have "insisted on going to trial." In short, Larweth provides no support whatsoever for his

ineffective assistance clam except his conclusory, self-serving statements.

Accordingly, the Court finds Larweth has not met the rigorous standard under *Strickland*

*v. Washington* and *Hill v. Lockhart* of demonstrating that defense counsel's failure to inform him

of the period of post-release supervision objectively unreasonable and created a reasonable

probability that, had he known of the post-release supervision, he would have chosen not to plead

guilty and instead would have proceeded to trial. *See Shabazz v. Perlman*, No. 04 Civ.

4355(LAP)(DFE), 2005 WL 2105533, *7 (S.D.N.Y. Sept. 1, 2005) ("As to the 'prejudice'

requirement [of *Strickland*], [petitioner] provides nothing except his own statement that he

wouldn't have pleaded guilty if he knew about supervised release. But I note that his exposure if

he went to trial and were convicted–even if only of the single charge he pleaded guilty to–would

have been a determinate sentence of up to 15 years (*see* Penal Law § 70.02(1)(b) and (3)(b))

([Section] 265.03 is a Class C violent felony), plus the mandatory post release supervision of 5

years, unless the judge decided to reduce it to no less than 2 ½ years, Penal Law § 70.45(2).

Given the evidence, it was unlikely that he might be acquitted. Hence pleading guilty was

definitely to his advantage. It is hard to believe his self-serving protestation that he would have

'insisted on going to trial.' In short, [petitioner] provides no support at all for his ineffective

assistance clam except his conclusory, self-serving statements."). Thus, this Court declines to

grant habeas relief on Larweth's claim that he was denied the effective assistance of counsel

because his attorney failed to advise him of the mandatory term of post-release supervision.

Therefore, his attorney's alleged ineffectiveness in failing to inform him that his bargained-for

sentence included a mandatory period of five-year period of post-release supervision was not

ineffective assistance within the meaning of the Sixth Amendment sufficient to excuse the

procedural default of his claim that his guilty plea was involuntary.

    Furthermore, Larweth cannot take advantage of the "fundamental miscarriage of justice"

exception to the procedural default, which requires a showing that the constitutional error in his

plea colloquy "'has probably resulted in the conviction of one who is actually innocent.'"

*Bousley v. United States*, 523 U.S. 614, 623 (1998) (quoting *Murray v. Carrier*, 477 U.S. 478,

496 (1986); *accord, e.g.*, *St. Helen v. Senkowski*, 374 F.3d 181, 183-84 (2d Cir. 2004)). To

establish actual innocence, Larweth must come forward with "new reliable evidence–whether it

be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical

evidence–that was not presented at trial[,]" demonstrate that "in light of all th[is] evidence," "it is

more likely than not[,]" that "no reasonable juror" would have convicted him." *Schlup v. Delo*,

513 U.S. 298, 323, 327, 328 (1995) (quotation omitted); *accord Boulsey*, 523 U.S. at 623.

Larweth has not come forward with any evidence that he is actually innocent of the crime to

which he pleaded guilty. Habeas review of the claim therefore is unavailable due to the

unexcused procedural default. Accordingly, it is dismissed on that basis.

In any event, even if the Court were to consider the substance of the claim regarding the

voluntariness of petitioner's guilty plea, it would find it to be without merit. The "test for

determining the [constitutional] validity of guilty pleas . . . was and remains whether the plea

represents a voluntary and intelligent choice among the alternative courses of action open to the

defendant." *North Carolina v. Alford*, 400 U.S. 25, 31(1970); *accord, e.g.*, *Kelleher v.*

*Henderson*, 531 F.2d 78, 81 (2d Cir. 1976); *Wilson v. McGinnis*, 413 F.3d 196, 198-99 (2d Cir.

2005).  In assessing the constitutional validity of a state court guilty plea where the defendant has

been given sentencing misinformation, the Second Circuit has explained that the test is "whether

the defendant was aware of actual sentencing possibilities, and, if not, whether accurate

information would have made any difference in his decision to enter a plea." *Williams v. Smith*,

591 F.2d 169, 172 (2d Cir. 1979) (citing *Caputo v. Henderson*, 541 F.2d 979 (2d Cir. 1976);

*Kelleher v. Henderson*, 531 F.2d at 81).

Addressing the first part of that test, it is undisputed that Larweth was not in fact aware that a mandatory period of five years of post-release supervision was going to be administratively added to his twelve-year sentence. However, based on all of the information in the record presently before it, and for all the reasons discussed elsewhere in this Decision and Order, the Court cannot find that had Larweth been provided with "accurate information" about the post-release supervision it would have made any difference whatever in his decision to plead guilty. *See, e.g.*, *Kelleher v. Henderson*, 531 F.2d at 82. In particular, the Court notes that Larweth faced a potential twenty-five-year sentence under the class B felony charges in the original indictment, and respondent indicates that it has sealed information regarding petitioner's criminal record which possibly could have allowed him to be sentenced as a persistent felony offender and receive an even longer sentence. *See* Resp't Mem. at 16 & n. 6 (Dkt. #8). Moreover, given the strength of the prosecution's evidence against petitioner and the brutality of his assault on the victim, Larweth was not likely to prevail at a jury trial. In light of these circumstances, the Court cannot believe that Larweth would have rejected the plea deal offered by the prosecution. The Court is even more incredulous that he would have chosen to take his case to trial had he been told that his "actual sentence" would include a period of post-release supervision. This claim therefore lacks merit and does not provide a basis for habeas relief.

### C. Analysis of the Remaining Claims Raised in the Petition

As bases for finding that his conviction was unconstitutionally obtained and that he is entitled to a writ of habeas corpus, Larweth asserts that the mandatory period of post-release supervision renders his plea bargain not properly enforceable because he cannot receive his

bargained-for twelve-year sentence; his plea colloquy did not establish the "dangerous

instrument" element of the offense of attempted first degree assault with a deadly weapon or

dangerous instrument; the trial court erred in sentencing him as a predicate felon (second felony

offender); and trial counsel was ineffective in failing to inform him that his sentence contained a

mandatory five-year period of post-release supervision, falsely representing that petitioner only

would have to serve four years of an indeterminate sentence, and failing to move to withdraw the

plea or to file a notice of appeal.

> **Ground One:**        **The plea bargain was unenforceable because the trial court
> failed to inform petitioner of the period of post-release
> supervision.**

As his first ground for habeas relief, Larweth states as follows:

> Plea bargain was not properly enforced waiver unenforceable [sic], must be
> allowed to withdraw plea. This contention is the issue of unilateral imposition of
> an additional consequent [sic] of the sentence imposed by the Department of
> Correctional services which was not a part of, nor at any time discussed either
> during the plea agreement or imposition of the sentence.

Pet. at 7, ¶22-A (Dkt. #1). This is the only argument Larweth makes in support of this ground.

Respondent has not specifically addressed this contention in his memorandum of law.

This claim corresponds to the first point raised by appellate counsel on direct appeal, in

which counsel argued that "[a]s Mr. Larweth's plea bargain was not properly enforced, his

waiver of his right to appeal is unenforceable and he must be allowed to withdraw his plea of

guilty." Resp't Ex. A at 8. Apparently, the claim was in the nature of a request for specific

performance. As a matter of both federal and state law, it is well settled that, when the

prosecution breaches a plea agreement, a defendant's remedy is either specific performance of

the plea agreement or an opportunity to withdraw his guilty plea. *United States v. Alexander*,

869 F.2d 91, 94 (2d Cir. 1991) (citing *Santobello v. New York,* 404 U.S. 257, 262-63 (1971);

*United States v. Brody*, 808 F.2d 944, 947 (2d Cir. 1986); *United States v. Abbamonte*, 759 F.2d

1065,1071-72 (2d Cir. 1985)); *see also People v. Auslander*, 146 A.D.2d 936, 936 (App. Div. 3d

Dept. 1989) (citing *People v. Schultz*, 73 N.Y.2d 757, 758 (N.Y. 1998)).

On Larweth's appeal, appellate counsel argued that "specific performance of the

bargained for sentence [wa]s not possible" because the "absence of . . . post-release supervision

[which was automatic and mandatory under N.Y. Penal Law § 70.45] would make the sentence

illegal." Resp't Ex. A at 9. Thus, the remedy appellate counsel sought was to have Larweth

relieved from having the appellate court "selectively enforce the other portions of the alleged

bargain (*i.e.*, . . . the waiver of the right to appeal . . . )." *Id.* The state appellate court, on direct

appeal, only addressed this claim to the extent that it "conclude[d] that the valid waiver by

defendant of the right to appeal encompasse[d] his contentions regarding the factual sufficiency

of the plea allocution[.]" *People v. Larweth*, 303 A.D.2d at 1029 (citations omitted).

Reviewing petitioner's appellate brief, it appears to this Court that appellate counsel

conceded the period-of post-release supervision was required to have been part of Larweth's

sentence; thus, on direct appeal, he did not request, as a remedy, that Larweth's sentence be

modified. *See* Resp't Ex. A at 8-10. The only time it appears Larweth sought to have his sentence

vacated was in the context of his C.P.L. § 440.20 motion wherein he argued that the trial court

erroneously failed to inform him of the mandatory additional period of post-release supervision.

The Second Circuit, however, recently held in *Earley v. Murray*, 451 F.3d 71 (2d Cir. 2006), that

only the trial court may, under the constitution, announce a defendant's sentence, and that it is

contrary to clearly established Supreme Court precedent for a state court to refuse to vacate a

defendant's sentence where, as here, a period of post-release supervision has been administratively added to the sentence. *See id.* at 75, 76. In light of this, the Court believes that it must examine whether, construing the *pro se* petition with a tolerant eye, petitioner states a claim for relief under *Earley v. Murray*, 451 F.3d 71, *supra*.

In *Earley*, petitioner pled guilty and was sentenced, pursuant to the plea agreement, to six years in prison; no term of post-release supervision following the six years of incarceration was included in the sentence announced in court by the judge, the written judgment, or the written order of commitment signed by the clerk of the court. 451 F.3d at 73. Unbeknownst to petitioner Earley, his counsel, the prosecutor, and the judge, New York had recently passed a statute imposing a mandatory term of post-release supervision that should have applied to Earley. *See* N.Y. Penal Law § 70.45(1) ("Each determinate sentence also includes, as a part thereof, an additional period of post-release supervision."). Because the parties were unaware of the new law, petitioner Earley was not informed of this mandatory provision during plea negotiations, the plea allocution, or at the time his six-year sentence was imposed. *Id.* Sometime between his sentencing in February 2000 and February 2002, the state department of correctional services administratively added a five-year term of post-release supervision to petitioner's sentence without informing him. *Id.*

After learning of this development and administratively exhausting his remedies, petitioner Earley filed a C.P.L. § 440.20 motion seeking to be re-sentenced according to the terms imposed by the sentencing judge, arguing that the modification to his sentence violated his due process rights and that he had received ineffective assistance of counsel. *Id.* While acknowledging that Earley should have been told about the post-release supervision, the state

court denied the C.P.L. § 440.20 motion to vacate the sentence, finding that because the period of

post-release supervision was mandatory under New York law, the request to eliminate it from

petitioner's sentence could not be granted. *Id.* Earley then filed a petition for a writ of habeas

corpus in federal district court, raising both a due process claim relating to the period of post-

release supervision and a claim of ineffective assistance of trial counsel, again asking for the

period of post-release supervision to be removed from his sentence. *Id.* The district court denied

the petition but granted a certificate of appealability as to both claims. *Id.*

In reviewing Earley's petition, the Second Circuit determined that *Hill v. United States ex*

*rel. Wampler*, 298 U.S. 460 (1936), provided clearly established Supreme Court precedent

supporting petitioner's claim regarding the mandatory period of post-release supervision

administratively added to his sentence. *Earley*, 451 F.3d at 74. As the *Earley* court explained,

*Wampler* stands for the basic precept that "'[t]he only sentence known to the law is the sentence

or judgment entered upon the records of the court. . . . Until corrected in a direct proceeding, it

says what it was meant to say, and this by an irrebuttable presumption.'" *Id.* (quoting *Wampler*,

298 U.S. at 464). *Wampler* also went on to articulate the following broader holding: "'The

judgment of the court establishes a defendant's sentence, and that sentence may not be increased

by an administrator's amendment.'" *Id.* (quoting *Wampler*, 298 U.S. at 464 and citing *Greene v.*

*United States*, 358 U.S. 326, 329 (1959) (quoting *Wampler*'s assertion that "the only sentence

known to the law is the sentence or judgment entered upon the records of the court"); *Johnson v.*

*Mabry*, 602 F.2d 167, 170 (8th Cir.1979) ("[T]he oral sentence pronounced by the sentencing

judge constitutes the judgment, and anything inconsistent with the judgment which is included in

a commitment order is a nullity."). Thus, under *Wampler*'s authority, "[t]he only cognizable

sentence is the one imposed by the judge. Any alteration to that sentence, unless made by a judge

in a subsequent proceeding, is of no effect."

*Id.*

Accordingly, the Second Circuit held that the state was only authorized to incarcerate

Earley for six years and no more–the sentencing term announced by the trial court. *Id.* (citing

*Wampler*, 298 U.S. at 465 ("The prisoner is detained, not by virtue of the warrant of

commitment, but on account of the judgment and sentence.") (citation and internal quotation

marks omitted); *United States v. A-Abras Inc.*, 185 F.3d 26, 29 (2d Cir. 1999) (holding that the

written judgment of commitment is simply evidence of the oral sentence)). The period of post-

release supervision, which had not been imposed by the judge, was unlawful. *Id.* Because

post-release supervision exposed Earley to the possibility of revocation and additional jail time,

he illegally was subjected to further "custody."[3] *Id.* (citing *Jones v. Cunningham*, 371 U.S. 236,

240-43 (1963) (holding that parole satisfies the "in custody" requirement of habeas petitions);

*Peck v. United States*, 73 F.3d 1220, 1224 n. 5 (2d Cir. 1995) (holding that supervised release

satisfies the "in custody" requirement of habeas petitions)). The addition of a period of post-

release supervision to Earley's sentence by the state department of correctional services[4]

---

[3]     Earley apparently had been released from prison in 2004 but was re-incarcerated for violating the terms of his post-release supervision; at the time his habeas petition was before the Second Circuit, he was still incarcerated.

[4]     The Second Circuit noted that when the department of correctional services discovered the oversight made by Earley's sentencing judge, the proper course would have been to inform the state of the problem, not to modify the sentence unilaterally. They could then have moved to have the offending sentence vacated and the defendant re-sentenced by a judge. *Earley*, 451 F.3d at 76 (citing N.Y. Crim. Proc. Law § 440.40(1) (providing, in relevant part, that "[a]t any time not more than one year after the entry of a judgment, the court in which it was entered may, upon motion of the people, set aside the sentence upon the ground that it was invalid as a matter of law"); *Wampler*, 298 U.S. at 464 ("If the [order of commitment] is inaccurate, there is a remedy by motion to correct it to the end that it may speak the truth.")).  The Second Circuit noted that it was "not clear" whether such a motion still could be made in Earley's case since more than a year had passed since the entry of judgment, *see* N.Y. Crim.

therefore was contrary to clearly established federal law as determined by the United States

Supreme Court in *Wampler*. *Id.* at 76.[5]

The issue before this Court, then, is whether any of the grounds raised in Larweth's *pro se*

petition state a claim for relief under *Earley v. Murray*. Both the Supreme Court and Second

Circuit clearly have confirmed that *pro se* litigants generally are entitled to have the courts

liberally construe their pleadings, which should be read to raise the strongest arguments that they

suggest. *E.g.*, *Green v. United States*, 260 F.3d 78, 83 (2d Cir. 2001) (citing, *inter alia*, *Graham*

*v. Henderson*, 89 F.3d 75, 79 (2d Cir.1996); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (*per*

*curiam*) (holding that the allegations in a *pro se* complaint are "h[e]ld to less stringent standards

than formal pleadings drafted by lawyers"); *Liriano v. United States*, 95 F.3d 119, 122 (2d Cir.

1996) (*per curiam*)); *see also*, *e.g.*, *Williams v. Kullman*, 722 F.2d 1048, 1053 (2d Cir. 1983).

The Court has reviewed Larweth's appellate brief, his pleadings in support of his collateral

motions to vacate the judgment and sentence, his habeas petition, and his traverse of law in

support of his habeas petition.The Court notes that in the context of the "specific performance"

claim, appellate counsel argued that "the sentencing court never actually sentenced Mr. Larweth

to a period of post-release supervision[.]" Resp't Ex. A at 8. Appellate counsel further asserted

that "post-release supervision is a significant, punitive component of defendant's sentence . . .

[and] a direct consequence of defendant's plea." Resp't Ex. A at 19 (quotation omitted; alteration

---

Proc. Law § 440.40(1), but observed that "[a]ny such questions will be for the New York courts to decide in the
event such an application is made," 451 F.3d at 76.

[5]      The Second Circuit explained that its ruling was not intended to preclude the state from moving in
the New York courts to modify Earley's sentence to include the mandatory term of post-release supervision. 451
F.3d at 77.

in original). In addition, Larweth's failure to be informed of the mandatory post-release supervision forms the basis for his procedurally defaulted claim that his plea was involuntary. Thus, even though Larweth did not explicitly ask for vacatur of his sentence on direct appeal or in his habeas petition, the mandatory period of post-release supervision, and the trial court's failure to inform him of it, has been a significant issue for Larweth in the context of his post-judgment attacks on his conviction.

The Court finds that the Second Circuit's decision in *Early v. Murray* controls on this point, since petitioner Earley, in his reply brief before the Second Circuit, asserted an argument based on specific performance of the plea agreement for which the defendant bargained. *See*, *e.g.*, Reply Brief for Petitioner-Appellant, *Earley v. Murray*, No. 04-4098-pr, 2005 WL 5310411 (2d Cir. Nov. 21, 2005) ("In *Santobello* [*v. New York*, 404 U.S. 257 (1971)], the [Supreme] Court held that the State must determine the 'ultimate relief' based on 'whether the circumstances of this case require only that there be specific performance of the agreement on the plea' or withdrawal of the guilty plea.") (quotation omitted); *id.* ("Where due process requires specific performance of a promised sentence, that should outweigh any consideration that such sentence is unauthorized by statute.") (citation omitted); *id.* ("Moreover, as noted above, specific performance in this case of a six year prison sentence with no PRS [post-release supervision] would not truly be violative of New York's statutory scheme."). In light of the arguments presented by petitioner Earley on his appeal to the Second Circuit, and given the Second Circuit and the Supreme Court's clear directives regarding the liberal construction to be afforded to pleadings of *pro se* litigants, the Court finds appropriate argument in Larweth's papers attacking his sentence on the ground that a term of post-release supervision was illegally added to his

sentence. This is sufficient to state a claim warranting habeas relief under *Earley*.

Respondent does not dispute that Larweth was not informed by the trial court, the prosecutor, or defense counsel that his sentence included a mandatory additional five-year period of post-release supervision. When Larweth attacked the period of post-release supervision by means of a C.P.L. § 440.20 motion in 2001, the state court rejected the claim. *See* Trav. at 5, ¶11 (Dkt. #10); *see also* Cattaraugus County Court Order Dated 10/21/03 Denying C.P.L. § 440.10 Motion (noting previous denial of petitioner's C.P.L. § 440.20 motion), Resp't Ex. M. Larweth's case clearly is "on all fours" with *Earley v. Murray* and therefore, Larweth's sentence was therefore never anything other than the twelve years of incarceration imposed on him by the judge at his sentencing hearing and recorded in his order of commitment. Thus, the period of post-release supervision added administratively is a "nullity." *Id.*  Under *Earley*, 451 F.3d at 76, the state court's determination that the addition of a five-period of post-release supervision to Larweth's sentence by the department of correctional services was permissible is  contrary to clearly established federal law as determined by the United States Supreme Court in *Hill v. United States ex rel. Wampler*, 298 U.S. at 464. Accordingly, the writ must be granted on petitioner's claim of specific performance.[6] *See Earley*, 451 F.3d at 76.

**Ground Two:        The plea allocution was factually insufficient.**

Larweth argues that the "facts elicited at petitioner's plea allocution do not support [a] requisite element for conviction of attempted use [sic] of [a] dangerous instrument." Trav. at 11 (Dkt. #10). On direct appeal, the Appellate Division held that "the valid waiver by defendant of

---

[6]        The Court's ruling is not intended to preclude respondent from moving in the New York courts to modify Larweth's sentence to include the mandatory period of post-release supervision should he be permitted to do so under applicable New York law. *See Earley*, 451 F.3d at 77.

the right to appeal encompasses his contentions concerning the factual sufficiency of the plea allocution[.]" *People v. Larweth*, 303 A.D.2d at 1029 (citations omitted). Arguably, this holding reflects a reliance upon an adequate and independent state ground and operates to create a procedural bar to habeas review. *See Harris v. Reed*, 489 U.S. 255, 160 (1989) (holding that it will not consider an issue of federal law on direct review from a judgment of a state court if that judgment rests on a state-law ground that is both independent of the merits of the federal claim and an adequate basis for the court's decision"); *Acosta v. Giambruno*, 326 F. Supp.2d 513, 522 (S.D.N.Y. 2004) ("[T]he Court finds that [petitioner's] affirmative waiver of his right to appeal also provides further independent and adequate state grounds to deny habeas relief.  The record is clear that [petitioner] validly waived his right to appeal his sentence as a condition to his plea agreement, which is both independent of the federal question raised and adequate to support the judgment."). Respondent, however, has not raised this as an affirmative defense and therefore has waived it. *See Gray v. Netherland*, 518 U.S. 152, 165-66 (1996). Therefore, the Court will proceed to consider the merits of the claim.

As respondent correctly notes, in order to determine whether the evidence on record is sufficient to support Larweth's conviction pursuant to a guilty plea, the Court must apply the rigorous standard set forth in *Jackson v. Virginia*, 443 U.S. 309 (1979). Under *Jackson*, a petitioner is entitled to reversal of his conviction only if *no* rational trier of fact, drawing all inferences in favor of the prosecution, could have found proof of guilt beyond a reasonable doubt based on the evidence presented. *Jackson*, 443 U.S. at 319, 324. Larweth here asserts only that his allocution "negated an essential element of the crime." Pet., ¶22-B (Dkt. #1). Larweth contends that because he never admitted that he kicked the victim while wearing work boots, the

prosecution failed to prove the "dangerous implement" element of attempted first degree assault

with a deadly weapon or dangerous instrument. *See* Trav. at 11 (Dkt. #10). Larweth asserts that

the "indictment charges petitioner used a pair of work boots, in a manner to inflict serious harm

upon alleged victim." *Id.* The Court has reviewed Indictment No. 01-47 which charged Larweth

with the crimes at issue, and there is no mention of "work boots" therein. In fact, the indictment

does not specify the type of dangerous instrument used. *See* Resp't Ex. B. Thus, the Court rejects

as factually unsupported petitioner's contention that the prosecution charged him, in the

indictment, with using work boots to inflict serious physical injury on the victim.

The Court turns next to the sufficiency of the factual allocution that occurred during

Larweth's plea in Cattaraugus County Court:

| | |
|---|---|
| The Court: | The second count of the indictment has been amended to accuse you of Attempted Assault in the First Degree. How do you plead to that charge? |
| The Defendant: | Guilty. |
| The Court: | Now, were you in Salamanca on February 28th of this year? |
| The Defendant: | Yes. |
| The Court: | Now, did you attempt to cause a serious physical injury to someone? |
| The Defendant: | Yes, your Honor. |
| The Court: | And who was that? |
| The Defendant: | Carol Doak? |
| The Court: | And did you attempt to do it by means of a deadly weapon or dangerous instrument? |
| The Defendant: | I hit her with my hands and I kicked her. If that's a dangerous weapon, yes. |
| The Court: | There is a dispute – I issued a search warrant for the boots. |
| The Defendant: | But I didn't wear the boots at the time of my arrest. I was wearing tennis sneakers and I had them brought up to jail to verify. I had the court – I went – on the 6th of March I had them brought up because I was due in city court on the 7th so I wanted to have a nice appearance and those were the clothes and they confiscated my boots. That wasn't what I was wearing when I was arrested. Totally different clothes |

|                  | and sneakers. |
| The Prosecutor:  | This is the attempt, your Honor. |
| The Court:       | Do you have – so these things were locked up at the jail? |
| The Defendant:   | Yes, they are. |
| The Court:       | The boots were brought up? |
| The Defendant:   | Yes. I can have the paperwork [in] a matter of minutes if they allow me. |
| The Prosecutor:  | If this is an attempt, your Honor, if he wasn't wearing them and the attempt comes to that . . . . |
| The Court:       | Well, no, because you still need the attempt to raise or cause injury by means of an instrument. You guys have proof to the contrary? If he's got proof the boots were brought to the jail after he's incarcerated . . . . |
| The Prosecutor:  | I did some research on this, your Honor, and even a handkerchief is a dangerous instrument. It depends on what's used at the time. |
| The Court:       | I wouldn't want to go to trial that tennis shoes weren't a dangerous instrument if he kicked somebody in the face with them. Notwithstanding that this is one of the reasons that you're entering the plea[,] to take advantage of the plea offer? |
| The Defendant:   | Exactly, your Honor. |

Resp't Ex. D at 18-22.

Contrary to Larweth's contention, tennis shoes can be a "dangerous instrument" within the meaning of New York State Penal Law § 120.10(1) under which he was convicted. Section 120.10(1) provides that a person is guilty of assault in the first degree when, with intent to cause serious physical injury to another person, he causes such injury to such person by means of a dangerous instrument. *See* N.Y. Penal Law § 120.10(1). A "dangerous instrument" includes any instrument "which, under the circumstances in which it is used, attempted to be used or threatened to be used, is readily capable of causing death or other serious physical injury." N.Y. Penal Law § 10.00(13).

As the New York Court of Appeals has noted, "any item, no matter how innocuous it may

-27-

appear to be when used for its legitimate purpose, becomes a dangerous instrument when it is used in a manner which renders it readily capable of causing serious physical injury." *People v. Carter*, 53 N.Y.2d 113, 116 (N.Y. 1981). Thus, courts in New York have consistently adopted a "use-oriented approach" that focuses not on the inherent nature of the object but on the "vice" of its temporary use during the defendant's commission of a crime. *Id.* (holding that rubber boots used to stomp upon a victim were dangerous instruments); *accord, e.g.*, *Garrway v. New York State Department of Corr. Servs.*, No. 96-2010, 104 F.3d 353, 1996 WL 670964, at *1 (2d Cir. Nov. 19, 1996) (recognizing and applying "use-oriented approach" articulated in *People v. Carter*); *Ibarra v. Burge*, No. 02CIV0825AGSAJP, 2002 WL 1467756, at *6 (S.D.N.Y. July 9, 2002) (same); *see also People v. Ford*, 60 A.D.2d 40 (App. Div. 1st Dept. 1977) (holding that common handkerchief with which a victim was gagged and which led to his asphyxiation was a "dangerous instrument" within the meaning of the Penal Law), *rev'd on other grounds by People v. Cwikla*, 46 N.Y.2d 434 (N.Y. 1979); *People v. Rumaner*, 45 A.D.2d 290 (App. Div. 3d Dept. 1974) (holding that leather boots used to kick a victim in the face were dangerous instruments); *People v. Bouldin*, 40 A.D.2d 1045 (App. Div. 3d Dept. 1972) (finding that a spatula used to inflict a cut was dangerous instrument); *see also People v. Vasquez*, 88 N.Y.2d 561, 580 (N.Y. 1996) (holding that wad of paper towels used to gag victim during the assault was dangerous instrument); *Matter of Jason J.*, 187 A.D.2d 652, 653 (App. Div. 2d Dept. 1992) (holding that "the shoe, sneaker, or boot with which the appellant kicked the complainant, under the circumstances, constituted a dangerous instrument"); *People v. Chia Yen Yun*, 35 A.D.3d 494, 494 (App. Div. 2d Dept. 2006) (holding that pair of boots was a dangerous instrument; *People v. Hansen*, 203 A.D.2d 588, 588 (App. Div. 2d Dept.) (holding that evidence that defendant kicked

-28-

the victim while wearing sneakers sufficed to establish assault by means of a dangerous

instrument"), *lv. denied*, 83 N.Y.2d 967 (N.Y. 1994); *People v. O'Hara*, 124 A.D.2d 895, 896

(App. Div. 3d Dept. 1986) (holding that pair of leather, round-toed boots used to kick victim was

a dangerous instruments).

Of importance here is the fact that the prosecution did not need to prove beyond a

reasonable doubt that petitioner was wearing work boots during the assault to which he pleaded

guilty; the indictment did not specify what type of dangerous instrument allegedly was used by

petitioner. Moreover, under New York's use-oriented approach, either tennis shoes or work boots

can be a "dangerous instrument"–what is determinative is how the defendant uses them during

the assault. Here, Larweth's sworn statements during his plea colloquy amply support a finding

that Larweth used whatever type of footwear he was wearing to kick his victim in a violent

manner, rendering the shoes or boots readily capable of causing serious physical injury.

Therefore, the "dangerous instrument" element of the assault charge clearly was satisfied by

petitioner's factual allocution during his guilty plea. This claim does not provide a basis for

habeas relief.

**Ground Four:[7]**      **Petitioner was improperly sentenced as a second felony offender.**

As his fourth ground for habeas relief, Larweth contends that the trial court erred in

sentencing him as a second felony offender under New York Penal Law § 70.06. *See* Pet. at 7

(Dkt. #1). Larweth states in the form habeas petition as follows: "The contention is the issue that

the alleged predicate felonies (out of state offenses were proper and within the meaning of CPL §

---

[7]        Ground Three, which challenges the voluntariness of petitioner's guilty plea, is discussed above in this Decision and Order in the section titled "Procedural Default."

440.21(5) [sic]; and whether petitioner received proper notice prior to sentencing." Pet. at 7, ¶22-
D (Dkt. #1). Respondent comments that it is "not clear" what Larweth "means by the first part of
the [foregoing] statement," Resp't Mem. at 9 (citations omitted) (Dkt. #8), and contends that, in
any event, "sentencing terms generally are not cognizable constitutional issues for federal habeas
review if the sentence falls within the statutory range," *id.*

A federal court may entertain a petition for a writ of habeas corpus only to the extent that
the prisoner alleges that he is in custody in violation of the Constitution, laws, or treaties of the
United States. 28 U.S.C. § 2254(a). Claims arising out of a state court sentencing decision are
thus not typically cognizable on federal habeas review. *Haynes v. Butler*, 825 F.2d 912, 923 (5th
Cir. 1987), *cert. denied*, 484 U.S. 1014 (1988); *see also Estelle v. McGuire*, 502 U.S. 62, 67
(1991) (reaffirming that errors of state law are not grounds for habeas review) (citing *Lewis v.
Jeffers*, 497 U.S. 764, 780 (1990); *Hameed v. Jones*, 750 F.2d 154, 160 (2d Cir. 1984). A claim
attacking a state sentence of imprisonment generally is not cognizable on federal habeas review if
the sentence is within the state's statutorily established limits. *See White v. Keane*, 969 F2d 1381,
1383 (2d Cir. 1992) ("No federal constitutional issue is presented where, as here, the sentence is
within the range prescribed by state law.") (citing *Underwood v. Kelly*, 692 F. Supp. 146
(E.D.N.Y.1988), *aff'd mem.*, 875 F.2d 857 (2d Cir.1989)); *see also Fielding v. LeFevre*, 548 F.2d
1102, 1108 & n. 11 (2d Cir. 1977); *Williams v. Duckworth*, 738 F.2d 828 (7th Cir. 1984) ("As a
general rule, a federal court will not review state sentencing determinations that fall within
statutory limits.") (citing *Solem v. Helm*, 463 U.S. 277, (1983) (denying Eighth Amendment
challenge to severity of sentence under recidivist statute); *Rummel v. Estelle*, 445 U.S. 263,
(1980) (rejecting Eighth Amendment challenge to severity of sentence under recidivist statute

and explaining that a state is "entitled to make its own judgment" as to sentencing terms for repeat offenders, "subject only to those strictures of the Eighth Amendment that can be informed by objective factors") (citing *Coker v. Georgia*, 433 U.S. at 592)); *United States v. Addonzio*, 442 U.S. 178, 186 (1979) (denying prisoner's collateral attack on his sentence pursuant to 28 U.S.C. § 2255 where there was no claim of a constitutional violation; the sentence imposed was within the statutory limits; and there was no error of fact or law of the "fundamental" character that infected the proceeding and rendered it irregular and invalid).

The Supreme Court has upheld recidivism statutes such as New York's second felony statute[8] "against contentions that they violate constitutional strictures dealing with double jeopardy, *ex post facto* laws, cruel and unusual punishment, due process, equal protection, and privileges and immunities." *Parke v. Raley*, 506 U.S. 20, 27 (1992) ("States have a valid interest in deterring and segregating habitual criminals.") (citing *Rummel v. Estelle*, 445 U.S. at 284). "When enhanced punishment depends upon evidence of prior criminal convictions, defendants have a right to procedural due process." *Camillo v. Armontrout*, 938 F.2d 879, 881 (8th Cir. 1991) (holding that the procedures under which defendant was sentenced as a persistent offender did not comply with the requirements of due process where the state "wholly failed to demonstrate any evidence that defendant had notice of the proceeding or an opportunity to be present to challenge the evidence of prior convictions") (citing *Specht v. Patterson*, 386 U.S. 605, 610 (1967); *Oyler v. Boles*, 368 U.S. 448, 452 (1962); *Chandler v. Fretag*, 348 U.S. 3, 8 (1954)). Due process requires that a defendant to be sentenced as a repeat offender "receive reasonable notice and an opportunity to be heard relative to the recidivist charge." *Oyler*, 368 U.S. at 452; *accord*

---

[8]        *See* N.Y. Penal Law § 70.06.

*Camillo*, 938 F.2d at 881.

With the foregoing principles in mind, the Court has reviewed Larweth's *pro se* habeas petition and pleadings submitted in the state courts below, mindful of the Supreme Court's direction that pleadings drafted by *pro se* litigants should be held to less rigid standards than those drafted by attorneys. *Haines v. Kerner*, 404 U.S. at 520-21. A lenient reading of the petition indicates that Larweth is claiming that he was denied due process in connection with his adjudication as a second felony offender. When Larweth questions "whether petitioner received proper notice prior to sentencing," *see* Pet. at 7 (Dkt. #1), Larweth appears to be re-asserting his claim, raised on direct appeal, that the prosecutor violated C.P.L. § 400.21(2). Section 400.21(2), among other things, requires the prosecutor to file a statement prior to sentencing setting forth the date and place of each alleged predicate felony conviction. *See* N.Y. Crim. Proc. Law § 400.21(2). In this case, the prosecutor filed the statement and mailed a copy to defendant, but Larweth's attorney claimed that he did not receive it prior to sentencing. Respondent argues that, as the state appellate court found on direct appeal, the prosecutor and the sentencing court substantially complied with the statutory requirements.[9]

Turning to the next allegation in Larweth's form habeas petition, the Court notes that Larweth cited to C.P.L. § 400.21(5), which sets forth the circumstances when a further hearing is required when the defendant controverts allegations regarding the predicate felonies sought to be

---

[9]        The Court is cognizant that the question of whether or not the trial court complied with New York's statutory law "is not normally reviewable by a federal court on habeas." *Camillo v. Armontrout*, 938 F.2d at 880 n. 3 (citing 28 U.S.C. § 2254(a) but nevertheless analyzing habeas petitioner's claim that he was improperly sentenced as persistent felony offender under Missouri statute as a due process claim; noting that Missouri courts have consistently found plain error when a trial court failed to comply with the statutory requirements of a persistent offender hearing)). Respondent does not argue that Larweth's claim regarding the lack of notice under C.P.L. § 400.21(2) & (3)  is not cognizable on federal habeas review but instead argues that Larweth's claim is without merit as matter of state law.

-32-

used against him. *See* Pet. at 8 (Dkt. #1); N.Y. Crim. Proc. Law § 400.21(5). In Larweth's case,

the prosecutor used two New Jersey convictions, one from 1983 and one from 1993. When

Larweth challenged his sentence by means of a motion to vacate pursuant to C.P.L. § 440.20, he

argued that the 1983 conviction was not a proper predicate felony.  Respondent argues that, in

any event, the sentencing court properly found that the two predicate felonies qualified for

purposes of New York Penal Law § 70.06. *See* Resp't Mem. at 10-11 (Dkt. #8). The Court

interprets this aspect of Larweth's claim as alleging that he was improperly adjudicated as a

second felony offender on the basis of inaccurate information, thereby violating his due process

rights, and that his sentence therefore was outside of the statutory limits, entitling him to habeas

relief. *Cf. McCool v. New York State*, 29 F. Supp.2d 151 (W.D.N.Y. 1998) (petitioner claimed

that sentencing court improperly adjudicated him as a persistent felony offender based on

inaccurate information concerning his criminal record; analyzing claim as violation of Fourteenth

Amendment due process rights); *McLaurin v. Kelly*, No. 94-CV-1560 RSP/GJD, 1998 WL

146282, *8 (N.D.N.Y. Mar. 27, 1998) (granting habeas relief where petitioner was adjudicated as

a persistent felony offender but did not receive a reasonable opportunity to controvert the sexual

abuse conviction that the state claimed justified his enhanced sentence; predicate conviction was

neither listed in predicate felony statement nor referred to or relied upon by prosecutor or

sentencing court, thereby denying petitioner his right to procedural due process).

     In New York, a second felony offender is defined as a "a person . . . , who stands

convicted of a felony defined in this chapter, other than a class A-I felony, after having

previously been subjected to one or more predicate felony convictions[.]" N.Y. Penal Law §

70.06(1). For purposes of determining whether a prior conviction is a "predicate felony

-33-

conviction," the following criteria apply: First, the conviction "must have been in [New York] of a felony, or in any other jurisdiction of an offense for which a sentence to a term of imprisonment in excess of one year or a sentence of death was authorized and is authorized in this state irrespective of whether such sentence was imposed[.]" N.Y. Penal Law § 70.06(1)(b)(I). Second, the sentence for such predicate felony conviction "must have been imposed before commission of the present felony[.]" N.Y. Penal Law § 70.06(1)(b)(ii). Subject to certain exceptions, the sentence "must have been imposed *not more than ten years* before commission of the felony of which the defendant presently stands convicted[.]" N.Y. Penal Law § 70.06(1)(b)(iv) (emphasis supplied).   The Penal Law, however, provides for tolling of Section 70.06(1)(b)(iv)'s ten-year cut-off period: "In calculating the ten year period under subparagraph (iv), any period of time during which the person was incarcerated for any reason between the time of commission of the previous felony and the time of commission of the present felony shall be excluded and such ten year period shall be extended by a period or periods equal to the time served under such incarceration." N.Y. Penal Law § 70.06 (1)(b)(v).

Section 400.21 of New York's Criminal Procedure Law sets forth the required procedure to be followed in determining whether a defendant qualifies as a second felony offender. Prior to any sentence being imposed on the conviction at issue, the prosecution must file a statement setting forth the date and place of each alleged predicate felony conviction. If any of the convictions are too remote on their face, and the prosecutor seeks the benefit of tolling under Section 70.06 (1)(b)(v), the statement also must set forth the start dates and end dates of each period of imprisonment to be used for tolling the ten-year limitations period. *See* N.Y. Crim. Proc. Law § 400.21(2). The defendant must be a given a copy of the predicate felony statement

prior to sentencing and must be asked whether he wishes to controvert any allegations therein. *See* N.Y. Crim. Proc. Law § 400.21(3). No further hearing is required where the uncontroverted allegations in the statement are sufficient to support the court's finding that the defendant has been subjected to the requisite predicate felony convictions. *See* N.Y. Crim. Proc. Law § 400.21(4). At that point, the sentencing court must enter a finding that the defendant is second felony offender and sentence him accordingly. *See id.*; *see also* N.Y. Penal Law § 70.06. Only where the defendant actually controverts an allegation in the predicate felony statement, and the uncontroverted allegations are insufficient to show that the defendant has qualifying previous felonies does the court have to hold a further hearing. *See* N.Y. Crim. Proc. Law § 400.21(5).

The Court turns first to Larweth's claim that he did not receive proper notice under C.P.L. §§ 400.21(2) and (3) of the prosecutor's intent to seek second felony offender status. At Larweth's sentencing hearing on August 6, 2001, the following colloquy occurred:

| | |
|---|---|
| Defense Counsel: | In this case we agreed upon a max of 12 years, cap, and he's facing a return to New Jersey on a probation violation. The probation does not recommend sentence at all, it's left up to you. Where are you, Dennis? |
| The Defendant: | Right here. |
| The Court: | [Has the prosecutor] got a sentencing recommendation? |
| The Prosecutor: | We filed a predicate felony statement with the Court. I don't think it changes [the sentence applicable to the offense to which petitioner pleaded guilty, *i.e.*, ]. It just ups the minimum, that's all, from three and a half to seven. |
| The Court: | Oh yeah, there's a predicate felony statement here. |
| The Prosecutor: | Did you get that, John? |
| Defense Counsel: | I didn't find it this morning. From you? |
| The Prosecutor: | Yeah, we mailed it last week. This is from the New Jersey stuff. |
| (Discussion off the record.) | |
| Defense Counsel: | You're recommending a sentence? |
| The Prosecutor: | It's the same sentence; just as a second felony offender, just ups the minimum. |

| | |
|---|---|
| Defense Counsel: | Okay. |
| The Court: | All right. There's a second felony offender statement, it looks like it's alleged that the – the charge was second degree armed – armed robbery in the first degree in New Jersey, May 13th, 1983, and sentenced on June 10th of that year, and there's a series of other allegations in here that allege that the – because of the amount of time that he was incarcerated, that he falls within the ten years as a second felony offender. |
| Defense Counsel: | He's going to have to return to New Jersey for dealing there, Your Honor. |
| The Court: | Well, it's simply for whether he's a predicate felon under New York. It's got to be within ten years, except you add to that ten years any time he was incarcerated. |
| Defense Counsel: | Uh-huh. Your probation report there – |
| The Court: | Yeah, well – |
| Defense Counsel: | – has a very detailed list of the offenses attached to it. |
| The Court: | Yeah, I saw that. But is that – I mean, do you have – did you serve enough time to – how much time have you served since that conviction in Jersey? |
| The Prosecutor: | He got out in '90, Judge, on the robbery conviction, and he got another five years on a drug conviction. |
| The Court: | Is that right? |
| The Defendant: | Yes. |
| The Court: | You're the same person? |
| The Defendant: | Yes. |
| The Court: | So that you served enough time added to that so it will come within ten years, okay. . . . |

Transcript of August 6, 2001 Sentencing Hearing at 3-4 ("Sent. Tr."), Resp't Ex. E.

The Court has reviewed the state court records provided by respondent. In the documents comprising the record on direct appeal, there is a copy of the prosecutor's predicate felony statement, which was filed on August 1, 2001, five days before Larweth's sentencing hearing. *See* Predicate Felony Statement dated 8/01/01 at 3, Resp't Ex. B. Furthermore, as part of petitioner's C.P.L. § 440.20 motion to vacate his sentence, he submitted a copy of the cover letter, also dated August 1, 2001, sent by the prosecutor to defense counsel enclosing the predicate felony

-36-

statement. *See* Letter from Cattaraugus County District Attorney to J. Goodell, Esq. dated 8/01/01, Resp't Ex. N. Thus, the documentary evidence in the state court records supports respondent's position that the prosecutor actually complied with the notice requirement of C.P.L. § 400.21(2), contrary to Larweth's assertions.

Moreover, as the quoted excerpt from the transcript makes clear, there was substantial compliance with directives of C.P.L. §§ 400.21(2) and (3), as the Appellate Division found. *People v. Larweth*, 303 A.D.2d at 1029. With respect to the notice requirement, it appears that the prosecutor complied with the filing requirements of C.P.L. § 400.21(2), which does not state a time-limitation, nor does it specify when the defendant must be served with a copy of the predicate felony statement. Section 400.21(3), titled "Preliminary examination," simply states that the defendant "must be given a copy of such statement and the court must ask him whether he wishes to controvert any allegation made therein." N.Y. Crim. Proc. Law § 400.21(3). It of course would have been preferable for Larweth to have seen the statement prior to the sentencing hearing. However, petitioner did have an opportunity to review it in court with his attorney, and the trial court properly questioned him about whether he disagreed with any of the information contained therein. Larweth did not controvert any of the allegations, and he unequivocally admitted on the record that he was the person convicted of the crimes set forth in the predicate felony statement. Section 400.21(7) provides that any uncontroverted allegations are deemed to have been admitted by the defendant. *See* N.Y. Crim. Proc. Law § 400.21(7). Although a previous conviction in New York or in another jurisdiction obtained in violation of the defendant's federal constitutional rights must not be counted in determining whether the defendant has sufficient qualifying predicate felonies, a defendant's failure to challenge the previous conviction

contemporaneously results in a waiver of any such claim unless good cause is shown. *See* N.Y.

Crim. Proc. Law § 400.21(7).  However, Larweth does not claim that any of the prior convictions

to which he admitted were either unconstitutionally obtained or reversed. Nor has he challenged

that he was, in fact, incarcerated with regard to those convictions for the time periods stated in the

predicate felony statement. The record indicates that Larweth's statements at the sentencing

hearing with regard to his previous felony convictions were made voluntarily–after consulting

with his attorney. There is nothing to suggest that Larweth made any statements there under

duress, or that he was ignorant of the legal consequences of such statements. To the contrary,

Larweth showed himself to be fairly savvy about the criminal justice system and the legal

ramifications of his actions and statements as well as those of the prosecutor and court.  Larweth

was provided with an opportunity to contest the validity of his previous convictions, as well as the

accuracy of the criminal record on which his status as a second felony offender was based. Thus,

as the transcript of the sentencing hearing illustrates, Larweth received "reasonable notice and an

opportunity to be heard," *Oyler*, 368 U.S. at 452, relative to the predicate felonies that were used

to adjudicate him as a second felony offender under New York's recidivist sentencing statute. As

petitioner received the due process to which he was constitutionally entitled, the Court finds that

this claim is therefore without merit.

The Court turns next to Larweth's claim that he was improperly sentenced as a second

felony offender because the predicate felonies did not qualify under Penal Law § 70.06. The first

predicate felony used by the state to qualify him as a second felony offender was an armed

robbery conviction from New Jersey. On May 13, 1983, Larweth pled guilty to two counts of first

degree armed robbery and was sentenced on June 10, 1983, to two consecutive sentences of ten

(10) years in prison, for an aggregate term of twenty (20) years on those convictions.[10] *See* Statement of Predicate Felony Conviction ("Predicate Felony Stmt.") at 1, Resp't Ex. B.  Larweth does not dispute that this conviction for armed robbery satisfies the requirements of Section 70.06(1)(b)(I) that the "conviction must have been in this state of a felony, or in any other jurisdiction of an offense for which a sentence to a term of imprisonment in excess of one year or a sentence of death was authorized and is authorized in this state irrespective of whether such sentence was imposed[.]" N.Y. Penal Law 70.06(1)(b)(I). However, as the sentencing court was aware, the 1983 armed robbery conviction was, on its face, too remote in time to serve as the basis for adjudicating him a second felony offender. As discussed above, Penal Law § 70.06 (1)(b)(iv) provides that, in order to qualify as a predicate prior felony conviction, a sentence must have been imposed thereon not more than 10 years before commission of the subsequent felony. Here, seventeen (17) years, nine (9) months, and fifteen (15) days had elapsed between petitioner's sentencing on June 10, 1983, and his commission, on February 28, 2001, of the offense to which he pled guilty.

The prosecutor argued to the sentencing court that Larweth's 1983 conviction qualified as a previous felony offense, however, through the application of the tolling provision in Penal Law

---

[10]     With respect to the 1983 armed robbery conviction, the Statement of Predicate Felony Conviction reads as follows:

> On May 13, 1983, the defendant, DENNIS M. LARWETH, entered a plea of guilty under Indictment No. 952-81 charging Armed Robbery in the First Degree utilizing a gun, in violation of New Jersey Criminal Statute 2C:15-1. On that same date, May 13, 1983, under Indictment No. 50-82, the same defendant, DENNIS M. LARWETH, entered a plea of guilty to a second count of Armed Robbery in the First Degree with a gun, in violation of New Jersey Criminal Statute 2C:15--1. On June 10, 1983, the defendant was sentenced under both Indictments to a term of imprisonment in a New Jersey State Prison, Riverfront State Prison, for a period of ten years, with a minimum under each sentence of three and one-third years parole ineligibility under both indictments. Both sentences were to run consecutively." Statement of Predicate Felony Conviction at 1, Resp't Ex. B.

§ 70.06 (1)(b)(v): "In calculating the ten year period under subparagraph (iv), any period of time during which the person was incarcerated *for any reason* between the time of commission of the previous felony and the time of commission of the present felony shall be excluded and such ten year period shall be extended by a period or periods equal to the time served under such incarceration." N.Y. Penal Law § 70.06(1)(b)(v) (emphasis supplied). It is important to note that Section 70.06(1)(b)(v) does not measure the 10-year limitation period from the release date on the predicate felony but "instead tolls that period when the defendant is incarcerated for any reason, not just for the prior felony[.]" *People v. Tatta*, 196 A.D.2d 328, 332 (App. Div. 2d 1994) (citing N.Y. Penal Law § 70.06), *appeal denied*, 79 N.Y.2d 923 (N.Y. 1992)); *see also People v. Cagle*, 26 A.D.3d 735, 809 N.Y.S.2d 332 (App. Div. 4th Dept. 2006) (holding that the tolling provision applies to the period of time in which defendant was in the day-reporting work release program inasmuch as he remained under the control and custody of the Department of Correctional Services and that the period of time in which defendant was in that program was credited toward his sentence of imprisonment) (citations omitted).

Thus, *all* of the time that Larweth was incarcerated during the time period between the first predicate felony conviction and the present offense serves to toll the ten-year period for purposes of determining whether the 1983 conviction could properly serve as a predicate for a second felony offender adjudication. The ten-year period first was tolled from June 10, 1983, until March 8, 1990, while Larweth was incarcerated on the 1983 armed robbery conviction, for a period of six (6) years, eight (8) months, and twenty-six (26) days. The next tolling period commenced on May 7, 1993, when petitioner began serving concurrent five-year terms of imprisonment for New Jersey convictions on charges of Possession of a Controlled Substance and

for violating the terms of his probation.  As noted above, incarceration for any reason–even for a conviction that is not being used as a predicate felony–counts toward the tolling authorized by Section 70.06(b)(1)(iv). *See* N.Y. Penal Law § 70.06(b)(1)(iv).  Larweth's release date from prison on this term of incarceration was June 18, 1996. Thus, the ten-year period was tolled from May 7, 1993, until June 18, 1996, for an additional three (3) years, one (1) month, and eleven (11) days. Adding the two periods of tolling together, the aggregate time that the clock was tolled due to Larweth's incarceration thus was nine (9) years, nine (9) months, and thirty-seven (37). Subtracting this nine-plus year tolling period from Larweth's seventeen-year-old predicate felony conviction for armed robbery brings that conviction within the ten-year time-frame allowable under New York Penal Law § 70.06(1)(b); essentially, the tolling provision made the 1983 armed robbery conviction an eight-year-old conviction as of the time of the sentencing on the conviction here at issue. Therefore, the 1983 armed robbery conviction fulfilled the statutory criteria of Penal Law § 70.06 and properly served as a predicate felony conviction for purposes of adjudicating Larweth as a second felony offender.

With regard to the second predicate felony conviction to be used in adjudicating Larweth as a second felony conviction, the prosecutor indicated at sentencing that the state was relying upon a "drug conviction" for which Larweth "got another five years." Sent. Tr. at 4, Resp't Ex. E. Larweth confirmed that he *did* have such a conviction, and that he was the individual so convicted. *Id.* The prosecutor did not indicate the year of that conviction, and there was no further discussion of it, as the quoted excerpt from the sentencing transcript shows. On direct appeal, the state asserted that the "conviction upon which the People relied to support a predicate felony sentence, was not the 1983 conviction. Although the 1983 conviction was discussed at sentencing,

the basis of the finding was Appellant's subsequent drug conviction." People's Appellate Brief at

18 (citing Sent. Tr. at 4), Resp't Ex. F. That does not appear to be an altogether accurate

statement; the 1983 felony certainly was needed since the prosecution was required to prove not

one but two predicate felonies under Penal Law § 70.06. In any event, respondent, in its

Memorandum of Law in opposition to Larweth's habeas petition, refers to a May 7, 1993 drug

conviction from New Jersey. The predicate felony statement indicates that

> [o]n May 7, 1993, defendant entered a guilty plea to two counts of violating the
> terms and conditions of his previously imposed probation and was sentenced to
> five years in a New Jersey State Prison. This sentence was to be served
> concurrently with an additional five year State Prison sentence for Possession of a
> Controlled Substance under Indictment No. 92-50-935. While serving his prison
> sentence at the Northern State Prison, the defendant had a parole hearing on April
> 15, 1994, and his parole was denied and he was required to serve 20 months in
> prison prior to any further eligibility for parole. His expected State Prison release
> date was June 18, 1996.

Predicate Felony Statement at 2, Resp't Ex. F. The conviction record apparently associated with

this entry in the predicate felony statement states as follows:

> 5/7/93  [Larweth] [p]leads Guilty to Cts: 3&4 of V.O. Prob. Sentenced to Custody
> of the Commissioner of Corrections to a term of five (5) years with no
> parole ineligibility. Fines & Penalties remain concurrent with Ind. 935-92
> [*i.e.*, the indictment charging Possession of a Controlled Substance].

The Predicate Felony Statement and the supporting documentation are somewhat ambiguous as

to whether the five-year sentence for the drug conviction was imposed on May 7, 1993, the same

date the sentence for the probation violation conviction was imposed, or whether it had been

imposed sometime earlier. The Court notes that the prosecutor is required to state explicitly,

pursuant to C.P.L. § 400.21, the start and end dates of each period of incarceration. However, the

sentence on the Possession of a Controlled Substance conviction had to have been imposed no

earlier than 1992, since that was year Larweth was indicted on the drug charge, as the indictment

number indicates. Thus, the New Jersey conviction for possession of a controlled substance

necessarily was less than ten years before Larweth's commission of the instant offense in

February 2001. As a consequence, the timeliness requirement of Penal Law § 70.06(1)(b)(iv) was

satisfied.

The only argument Larweth potentially could make regarding the validity of the New

Jersey drug conviction is that the New Jersey conviction was not equivalent to a New York

felony conviction for purposes of Penal Law § 70.06(1)(b)(i). *See* N.Y. Penal Law 70.06(1)(b)(I)

(providing that a predicate felony conviction must have been in New York of a felony or in any

other jurisdiction of an offense for which a sentence to a term of imprisonment in excess of one

year . . . was authorized and is authorized in [New York] irrespective of whether such sentence

was imposed).  The Court notes that the predicate felony statement does not indicate the section

of the New Jersey Code of Criminal Justice under which Larweth's drug conviction arose; New

Jersey does not divide offenses into categories of misdemeanors and felonies as New York does,

but instead appears to classify offenses as "crimes of degree."  In New York, all of the statutory

offenses charging criminal possession of a controlled substance are felonies of a certain degree

except seventh degree criminal possession of a controlled substance, which is a class A

misdemeanor. For a conviction of any degree of a felony in New York, a sentencing court is

authorized to impose at least a one-year term of imprisonment. *See* N.Y. Penal Law § 70.00(3).

Any drug offense as defined by New Jersey's criminal statute for which Larweth would have

received a sentence of five-years imprisonment necessarily must have been equivalent to a

-43-

qualifying New York felony under Section § 70.06(1)(b)(I)–that is, it must have included all of the essential elements for a New York felony for which a sentence to a term of imprisonment in excess of one year or death was authorized.

Even assuming for the sake of argument that Larweth had a colorable argument that New Jersey drug conviction was not equivalent to a New York felony conviction for purposes of Penal Law § 70.06, any error was harmless and not of a constitutional dimension. There is no indication that the sentencing court relied in any way on Larweth's second felony offender status in pronouncing the sentence: Larweth pled guilty to one count of attempted first degree assault, a class C felony, in satisfaction of a multiple-count indictment, in exchange for a sentence promise of twelve years. At sentencing, the trial court imposed the agreed-upon sentence of twelve years. Even if there was an error in adjudicating Larweth as a second felony offender, which this Court does not find to have been the case, it did not harm Larweth since the finding of second felony offender status did not affect the length of the sentence imposed by the trial court. The Court accordingly denies habeas relief on this claim.

**Grounds Five, Six and Seven:**      **Petitioner was denied his Sixth Amendment right to the effective assistance trial.**

As his fifth, sixth and seventh grounds for habeas relief, Larweth complains that trial counsel provided ineffective assistance in failing to communicate "accurate information" about the plea agreement (Ground Five); failing to inform him about the mandatory period of post-release supervision (Ground Six); and failing to file a notice of appeal or to move to withdraw the plea (Ground Seven).

The Court turns first to Ground Five, which alleges that trial counsel "failed to

communicate accurate information about the plea," because he allegedly falsely informed petitioner that he would only have to serve four years of an *indeterminate* sentence if he pled guilty. *See* Pet. at 8a (Dkt. #1). First of all, Larweth cannot claim that he was going to serve an indeterminate sentence–such a sentence would have been illegal in his case under the Penal Law, and there is no indication in the record that he ever was informed that the sentence promise was going to be anything other than a determinate term of imprisonment. With regard to the statements about only serving four years in prison, Larweth apparently has taken certain statements by his attorney out of context. In a letter to petitioner dated August 7, 2001, the day after petitioner appeared in court to plead guilty, trial counsel stated that he had "mentioned parole to [Larweth's] friends in court" but stated to them that Larweth was not eligible since he was serving a determinate sentence of imprisonment. *See* Resp't Ex. I; *see also* N.Y. Penal Law § 70.40. However, trial counsel apparently commented to Larweth's friends that Larweth was "entitled to credit for good time, one third, or in [his] case, 4 years off a 12 year sentence." *See* Resp't Ex. I.

Trial counsel was correct that Larweth was not entitled to parole but he was eligible under Section 70.40 for "conditional release" when his total "good behavior time," *see* N.Y. Penal Law § 70.30(4), was equal to the unserved term of the determinate sentence. It appears, however, that trial counsel mistakenly referred to the maximum good time allowance for indeterminate sentences, which is one-third of the maximum term, *see* N.Y. Penal Law § 70.30(4)(a). Larweth, however, received a determinate sentence, for which the maximum time allowance is one-seventh of the term of the sentence. *See* N.Y. Correction Law § 803. Thus, trial counsel's statement was inaccurate in that respect. However, Larweth has neither alleged nor demonstrated

that any of the foregoing remarks by trial counsel about the possibility of conditional release were made to him personally, or had any influence or effect on his decision to plead guilty. Larweth therefore has failed to show how he was prejudiced as a result of trial counsel's mistaken statement on this minor issue regarding Larweth's future eligibility for good time credit. *See Hill v. Lockhart,* 474 U.S. at 60 (defendant had failed adequately to assert prejudice as a result of counsel's representation where he had failed to "allege in his habeas petition that, had counsel correctly informed him about his parole eligibility date, he would have not pleaded guilty and [would have] insisted on going to trial"); *compare with Cullen v. United States*, 194 F.3d 401, 404 (2d Cir. 1999) (finding deficient representation where defense counsel provided "significantly inaccurate" calculation of sentencing ranges upon a plea and upon conviction after trial).

Turning next to the claims regarding the filing of a notice of appeal and moving to withdraw the plea, in August 2001, Larweth's counsel sent him a letter indicating that it "would be a waste of time" to appeal from the sentence. *See* Resp't Ex. I. On September 11, 2001, Larweth sent his attorney a letter stating that he intended to appeal his conviction and requesting his file, which the attorney provided. Larweth sought leave to file a late notice of appeal, which was granted; the Appellate Division assigned new appellate counsel to perfect Larweth's appeal for him. The former attorney wrote to the Appellate Division on October 30, 2001, stating that he was "very sure" he gave Larweth "no reason to think [he] had filed a notice of appeal on his behalf." Resp't Ex. I. Trial counsel stated that he was "absolutely clear that [he] would not represent him further either to try to set aside the plea or seek an appeal." *Id.*

This Court need not decide whether the failure to file a notice of appeal amounts to

constitutionally deficient performance on trial counsel's part because, under the circumstances, petitioner was not prejudiced: he was permitted to file a late notice of appeal, and he was assigned appellate counsel. Larweth's failure to meet the "prejudice" prong of *Strickland* necessarily defeats this aspect of his ineffective assistance claim.

The Court turns next to petitioner's claim that trial counsel's failure to move to withdraw the plea deprived him of the effective assistance of counsel. A discussion of *Hines v. Miller*, 318 F.3d 157, 163 (2d Cir. 2003), is useful in resolving this claim. In *Hines*, the petitioner had pleaded guilty but did not move to withdraw his plea. When he attempted to argue that his trial counsel was ineffective in failing to file a motion on his behalf, the state appellate court held that Hines' claims of coercion and innocence were not supported by the record; that his attorney did not coerce him into not moving to withdraw the plea, but simply gave him sound advice as to the strength of his case; that his attorney properly declined to join in the withdrawal motion; that appointment of new counsel was not required; and that he received meaningful representation. *Hines*, 318 F.3d at 163. On habeas review, Hines argued that he had received ineffective assistance of counsel based on his attorney's failure to represent him on the motion, and the district court construed Hines' petition to argue that his motion to withdraw his plea based on his attorney's coercion created an actual conflict of interest that left him effectively unrepresented. *Hines*, 318 F.3d at 162. The district court denied the petition but issued a certificate of appealability.

The Second Circuit in *Hines* pointed out that although the United States Supreme Court has issued numerous opinions concerning various aspects of a defendant's right to counsel, *e.g.*, *Strickland v. Washington*, 466 U.S. at 684-96; *Cuyler v. Sullivan*, 446 U.S. 335, 348-49 (1980);

*Coleman v. Alabama*, 399 U.S. 1, 7-11 (1970); *Mempa v. Rhay*, 389 U.S. 128, 134-37 (1967);

*Gideon v. Wainwright*, 372 U.S. 335, 339-45 (1963), it nevertheless has not specifically

addressed a claim that petitioner was denied his Sixth Amendment right to the assistance of

counsel because he was effectively unrepresented on his motion to withdraw his plea, *Hines*, 318

F.3d at 163 (citing *Coleman*, 399 U.S. at 7-11; *Mempa*, 389 U.S. at 134-37). The Circuit courts

have diverged in their approaches, with the Second Circuit applying *Strickland v. Washington*,

*Cuyler v. Sullivan*, or similar analyses for assessing ineffective assistance claims, and generally

have decided the case on the basis of "whether the underlying motion had sufficient merit to

create an actual conflict of interest or present a "'plausible alternative defense strategy.'" *Hines*,

318 F.3d at 163 (citing *United States v. Morris*, 259 F.3d 894, 899 (7th Cir.2001); *United States v.

Davis*, 239 F.3d 283, 285-88 (2d Cir. 2001); *United States v. Moree*, 220 F.3d 65, 69-72 (2d Cir.

2000); *Lopez v. Scully*, 58 F.3d 38, 41-43 (2d Cir. 1995); *United States v. Craig*, 985 F.2d 175,

178-80 (4th Cir. 1993); *United States v. Trussel*, 961 F.2d 685, 688-90 (7th Cir. 1992); *Guzman v.

Sabourin*, 124 F. Supp.2d 828, 833, 834-36 (S.D.N.Y. 2000); *Fluitt v. Superintendent, Green

Haven Corr. Facility*, 480 F. Supp. 81, 85-87 (S.D.N.Y.1979), *cert. denied*, 538 U.S. 1040

(2003)).

    After noting the many differing analyses employed by, and outcomes reached by the

federal courts when dealing with such claims, the Second Circuit in *Hines* found no basis for

concluding that the state appellate court's decision represented an unreasonable application of

clearly established Federal law as determined by the Supreme Court of the United States. *Hines*,

318 F.3d at 164. Accordingly, the Second Circuit affirmed the district court's rejection of Hines'

claim that his lack of representation on his motion to withdraw his guilty plea deprived him of

his Sixth Amendment right to counsel. *Id.*

Larweth asserted this claim in support of his C.P.L. § 440.10 motion to vacate the judgment. The trial court did not specifically address the claim regarding trial counsel's failure to move to withdraw the plea, instead holding that the motion was "in all respects denied." *See* Resp't Ex. K. The Second Circuit explicitly has held that a "silent opinion" that does not explicitly refer to either the federal claim or to relevant federal case law still can constitute an adjudication on the merits for purposes applying AEDPA's deferential standard. *Jimenez v. Walker*, 458 F.3d 130, 143 n.13 (2d Cir. 2006) (citing *Sellan v. Kuhlman*, 261 F.3d at 311-14). Here, the state court disposed of the claim "on the merits" (*i.e.*, there is no indication from the face of its opinion that it relied on a procedural ground in dismissing the claim) and reduced its disposition to judgment. *See Sellan*, 261 F.3d at 312. Thus, in order to grant habeas relief, this Court must find that the state court's holding was contrary to, or an unreasonable application of, clearly established Supreme Court precedent, or that it was an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d)(1), (2). As discussed at length above, Larweth did not have a colorable basis on which to vacate his plea. A claim of ineffective assistance of counsel cannot be based on "the failure to make a meritless argument." *United States v. Kirsh*, 54 F.3d 1062, 1071 (2d Cir. 1995) (denying ineffective assistance claim in part because motions not pursued by counsel lacked merit) (citing *United States v. Javino*, 960 F.2d 1137, 1145 (2d Cir.), *cert. denied*, 506 U.S. 979  (1992)). Based on the Second Circuit's clear holding in *Hines v. Miller*, the Court concludes that the state court did not unreasonably apply clearly established federal law in rejecting Larweth's claim that trial counsel was constitutionally ineffective because he failed to move to withdraw the plea. Accordingly, this claim does not provide a basis for habeas relief.

Finally, the Court turns to Larweth's claim that his attorney's failure to advise him of the mandatory period of post-release supervision amounted to ineffective assistance of counsel. Earlier in this Decision and Order, the Court discussed the claim in the context of determining whether that omission amounted to a true denial of the Sixth Amendment right to counsel for purposes of constituting "cause" to excuse Larweth's procedurally defaulted claim regarding the voluntariness of his guilty plea, and held that it did not. *See Edwards v. Carpenter*, 529 U.S. at 451-52. The Court is mindful that in *Earley v. Murray*, 451 F.3d 71, *supra*, the Second Circuit case granting habeas relief due to the trial court's failed to inform petitioner of the mandatory period of post-release supervision, petitioner raised a claim of ineffective assistance of trial counsel essentially the same as the one raised by Larweth here. *See* Reply Brief for Petitioner-Appellant, *Earley v. Murray*, No. 04-4098-pr, 2005 WL 5310411 (2d Cir. Nov. 21, 2005) ("There is no doubt that counsel did fail to so advise [of the mandatory post-release supervision], and no doubt that counsel should have done so. The only real question involves the second prong, that is, whether there would have been a different result, whether petitioner would have accepted the plea offer had he known that a five-year term of PRS [post-release supervision] would be added to the prison term of six years. It is respectfully submitted that the court below erred in holding as a matter of law . . .that petitioner would have accepted the plea offer had he known of the full consequences of that plea. . . His claim is that . . . he likely would have rejected the six-year imprisonment term if he knew that he would get an additional five-year PRS term, during which he could be re-incarcerated on substantially less predicate facts than if his sentence were entirely finished.").

In *Earley*, the Second Circuit, having granted the petition on the basis that the trial court

erred in refusing to vacate Earley's sentence despite its failure to inform him of the post-release

supervision, explicitly declined to consider Earley's ineffective assistance of trial counsel claim

based on the same failure to advise. This Court, after reviewing the record before it, remains

convinced that there is no reasonable possibility that Larweth would have proceeded to trial and

opted not to plead guilty had he known about the post-release supervision. *See Shabazz v.*

*Perlman*, 2005 WL 2105533, at *7. Thus, this Court declines to grant habeas relief on this claim

of ineffective assistance of trial counsel. However, because the issue appears to be as yet

unresolved by the Second Circuit or the Supreme Court, the Court determines that it should grant

a certificate of appealability limited to the issue of whether trial counsel's failure to inform

petitioner that his bargained-for sentence included a mandatory five-year term of post-release

supervision amounted to a denial of the Sixth Amendment right to the effective assistance of

counsel. *See Earley v. Murray*, 451 F.3d at 75-76, *supra*; *see also Lucidore v. New York State*

*Div'n' of Parole*, 209 F.3d 107, 112 (2d Cir. 2000); 28 U.S.C. § 2253(c)(2).

## IV.    Conclusion

For the reasons set forth above, petitioner Dennis Larweth's petition for a writ of habeas

corpus is **GRANTED** as to his first claim for relief, *i.e.*, that the trial court's failure to inform

him of the mandatory period of post-release supervision entitles him to specific performance of

the plea agreement. *See Earley v. Murray*, 451 F.3d 71, *supra*. The petition is **DENIED** as to the

all Larweth's remaining claims for relief. However, because the Court finds that Larweth has

made a substantial showing of the denial of a constitutional right with respect to his claim that

trial counsel was ineffective in failing to inform him of the mandatory period of post-release

supervision prior to his guilty plea, the Court **GRANTS** a certificate of appealability limited

solely to that issue. *See Lucidore v. New York State Div'n of Parole*, 209 F.3d at 112 ("The

Supreme Court has held that a 'substantial showing' does not compel a petitioner to demonstrate

that he would prevail on the merits, but merely that the issues involved in his case 'are debatable

among jurists of reason; that a court could resolve the issues [in a different manner]; or that the

questions are adequate to deserve encouragement to proceed further.'") (quoting *Barefoot v.

Estelle*, 463 U.S. 880, 893 n. 4 (1983) (internal quotation marks omitted) (emphasis and

alteration in original); *see also* 28 U.S.C. § 2253(c)(2). The Court **DENIES** a certificate of

appealability with regard to Larweth's remaining claims because it finds that he has not made a

substantial showing of the denial of a constitutional right as to any of them. *See* 28 U.S.C. §

2253(c)(2).

      **IT IS SO ORDERED.**

/s/ *Victor E. Bianchini*

_____

VICTOR E. BIANCHINI
United States Magistrate Judge

Dated: June 29, 2007
      Buffalo, New York.